single sitting of this particular panel on this case it comes back to us after a few years we formed panel I was the fortunate one you could sit on both cases good to see familiar faces again I will call the case which is Ryan at all in Ray calls number 25 11 2 5 3 and 2 5 4 it appears Mr. Cassell gets to go first good morning your honors and may it please the court Paul Cassell for Anisha Ryan and 30 other families who lost loved ones in the crashes of two Boeing 737 max aircraft how many of the victim's families are seated in the courtroom today many others around the globe are listening on this court's audio feed and Judge Southwick as you mentioned familiar faces we're back here because two and a half years ago we asked this court to enforce the victim's family's rights three of the rights have been proven to be violated and the court will recall that a few months later it issued an opinion promising these families that at quote every stage close quote of these proceedings their rights would be protected yet nonetheless this court denied mandamus at that time because in its view it was premature to step in and afford their rights court had confidence that would happen in the district court courts confidence was misplaced what's happened now is the families were told by this court two and a half years ago they were premature and if we understand the argument of the other side correctly at this point now they're being told in February of 2026 that they're too late when do they get their rights when do they get their promised rights to confer about the DPA which has shaped the course of this of these proceedings from Mr. Cassell certainly as I can speak for itself is the argument is too late or that those rights have been honored isn't that closer to what they're arguing you may disagree that it was honored well we do disagree and let me explain why I think the other side is conflating two very separate things they've argued in their briefs that the DPA has somehow become inoperative or no longer exists that is simply untrue and let me first emphasize the fact that that is a factual argument a mootness argument they never presented that below they presented it for the first time in their responsive briefing here so I think the simplest way for this court to proceed today's Thursday Friday morning you enter a two-sentence order which says parties have argued that the case aspects of it have become moot we remand to the district court for consideration in the first instance of that mootness argument we want an opportunity to build a full record on how the DPA continues to shape the course of these proceedings and how the violations of their rights in 2021 and thereabouts continue to influence this case well you certainly need to address that now I'm intrigued by your argument in your brief that the DPA is somehow infected yes the current decision yes you will be elaborating on that I'm sure sure how do we know that the DPA infected the NPA and current proceedings just look at the NPA look at its first substantive paragraph paragraph 3 and it says and I quote pursuant to paragraph 26 of the DPA various things follow what are the various things that follow one of the things again looking at paragraph 3 of the DPA this is outcome reflex a fine at the top end of the applicable sentencing guideline range where did the applicable sentencing guideline range come from came from paragraph 9 of the DPA let me give you a very specific illustration judge Southwick of what is so morally offensive and factually unsupportable from the perspective of the families that DPA said that Boeing's senior management did not facilitate the crime in any way that's paragraph 4 H of the DPA now we wanted to confer about that the families very much want to address the government's view that the senior management of Boeing was uninvolved in the deadliest corporate crime in US history but that's a binding agreement between the government and Boeing that senior management wasn't involved and then that influences the sentencing guidelines influences the fine calculation influences frankly the whole way that this case is preceded because if Boeing senior management was involved in the crime outcomes should be structured differently to ensure that corrective measures are taken and that the public safety when it flies across the country across the world is fully protected and all we have to do to avoid mootness is to show that we have some interest however small and the outcome of the case at this point the families once again are pressing the same argument that they pressed as you know two and a half years ago that the DPA needs to be set aside so what is it that you are arguing specifically that the government needs to do to satisfy the CVA CVRA conferences notices whatever kind of fair treatment what if you could itemize for us what you what has not happened that you believe under the CVRA should have happened yes unfettered conferral is the tagline for what we're seeking so for example to build on the illustration I was just giving we want to confer with the government about how Boeing senior management was involved in orchestrating this concealment from the from the FAA and we have never had that opportunity not before January 7th 2021 when the agreement was entered at no point through the course of the proceedings have we had the opportunity to sit down with the government and say we want to confer with you here's our position on Boeing senior management let's hear your position on that let's see if you've made any mistakes by the way the Securities and Exchange Commission a sister agency of the Justice Department has concluded that Boeing senior management should be fined a million dollars because of concealing from the public the defects and the Boeing 737 facts that apparently the government has never considered you also know if you read through the transcripts of the conferral sessions we've asked a lot of questions I in particular have been I think the most aggressive questioner of the Justice Department asking how did you calculate those sentencing guidelines how do you conclude that the only victims in this case are FAA bureaucrats and not 346 family members who lost loved ones how do you come up with those calculations how did you conclude that Boeing senior management was never involved in this crime even though it extended for years and involved hundreds of millions of dollars in gain to the to Boeing even under their own calculation and again a lot of things what else should we you want an itemized list we have five bullet points and sentencing guideline issues that were distorted by the DPA for example astonishingly the government's position on the guidelines is that there was no reckless risk of death in concealing from the FAA a new software program that could take over the airplane and in fact did take over two aircraft crashing both of them killing 346 people that when I was a district judge I wrote an opinion about swallowing the gun we expect government prosecutors to come in front of courts and it's you know present all of the facts that are if the defendant had a gun in the case or some other culpable action that needs to be presented to the court and what the government in Boeing secretly orchestrated more than four years ago was a way of swallowing the gun concealing what Boeing's corporate management had done concealing the full scope of the crime concealing its full consequences the deaths of 346 passengers and crew and how do we know the DPA is still in effect it says so paragraph 35 of the DPA right at the back end this is a binding agreement between the government and Boeing and the government says well look there's breach yes but what happens when the DPA was breached that doesn't render it inoperative that just kicks in paragraph 26 of the DPA which says in the event of a breach the government is free to pursue a prosecution of Boeing but that doesn't invalidate paragraph 9 of the DPA the sentencing guideline calculations that doesn't invalidate paragraph 4 H of the DPA which says Boeing senior management was not involved and so the DPA continues to be in play but again this is the past you a little bit of an elaboration on what judging Lord asked it seems to me there is factually a period or a time in which there was conferral let me ask you in that fairly simple statement where does the government fall short was it the timing was it who participated was the degree of information shared you can come up with better examples what was wrong with the conferral that occurred it was not unfettered conferral I guess that's a double negative it was fettered conferral we wanted to confer about whether Boeing senior management was involved in this crime but the government couldn't they had signed a binding agreement saying that Boeing senior management was not facilitating the crime that's the harm and the one court well let me ask you about that they couldn't confer on it was there a question at all about it and they said well we've already signed off on it it wasn't right it was not raised at all you can look at the transcripts of the conferral session where we've tried to present these issues you can look at repeated objections that we've made to the sentencing guideline calculations that rest on the idea for example that Boeing senior management wasn't involved and if you read through the the transcripts I think you'll see a sense of frustration for me or I'm saying how did you come up with these guideline calculations they say well we've already answered that in earlier briefing we don't want to get into it now we're not going to talk about that now they kept by their own words referring back to earlier proceedings and the issue at this point is only you're asking how do we know whether the conferrals fell short or not I mean I guess you could go through and read all the conferral meetings recall the government didn't want us to record those but fortunately we did but you could do that but we submit that the way to handle this is to send it back to Judge O'Connor he's lived with the case for four years he knows about the conferrals he's had an opportunity to develop parts of the record and so he an issue of mootness or the factual question that you just asked about where did the conferral session fall short that's a factual question Judge O'Connor should decide now if you look at his opinion he does say that their government conferred that's at page nine I think there are a few sentences at the end of his opinion but those sentences only discussed conferrals about the NPA he never went back and discharged his obligation under this court's earlier ruling in Ryan that every stage of the process was going to protect victims rights which stage of the process didn't protect the victims rights the first stage the most important stage the stage that set the trajectory of this case for the last four years and if the CBR is a is going to mean anything it can't mean well four years later after you've kind of got everything done the way you want it now you can have a conferral session and say close enough for government work that's not what the CVRA says that's not what this court said in Ryan this court in Ryan promised these victims that they would have an opportunity to afford to be afforded their rights in connection with every stage of the proceedings and when you read through the briefs you know I keep harping on every stage because obviously that's language that we're relying on heavily you'll notice that neither Boeing nor the government's brief even mentions that language in there in their brief judge O'Connor never covered that in his decision below in fact the one other point I would really well let me ask you a lot of every stage obviously until the stage of this appellate argument right now is in the past correct so insofar as you read O'Connor or this court guaranteeing every stage has occurred we have to turn back the clock or flip back the calendar page so I think what judge O'Connor was looking at is has as whatever failures there have been in the past been rectified in the way the CVRA requires and that to me is the issue so let me answer your question and all I'm saying is every stage is not very helpful in my view it's insofar as what has happened now does it allow the kind of consultation conferral whatever the right word is that the CVRA demands right and the CVRA mandates that judge O'Connor is sure that they were given a reasonable right to confer at that first stage the DPA a conventional remedy that's awarded by courts like this one is restoration of the status quo ante the status quo ante was no DPA binding the government to the position that Boeing senior leadership was never involved in this crime that would have been an easy remedy to award at some point along the way certainly a remedy that this court could award right now and a remedy that this court should award by the way how do we know the court has the enforcement power to do that well if you read through the CVA there's a provision d5 entitled wait for it enforcement and what does it say okay there are limitations on enforcement you can't set aside a plea agreement or a sentence the obvious implication being that well if you want some other things set aside Congress has authorized that and the only court to reach this issue is the Jeffrey Epstein court Southern District of Florida District Court that said yes when you look at d5 you can't set aside a plea or a sentence but anything else you can set aside this court in in Ray Allen a 2013 5th Circuit decision said oh you're trying to get a remedy here it doesn't involve setting aside a plea or a sentence d5 then doesn't restrict your ability to get that so d5 by implication as the District of Florida indicated gives authority to the district court to do frankly what is a standard remedy we're not asking for some radical structural intervention or anything like that we're just saying put these families back in the position that they would have been in if the government in Boeing had not deliberately violated their rights by orchestrating a secret agreement these later after the fact conferrals are later after the fact conferrals after the violations had already occurred and after these families lost their opportunity to change the trajectory of this prosecution and that's why this case is so important because if you accept the government in Boeing's position the CBRA essentially becomes a dead letter because whenever there's some violation of victims rights oh you didn't get to be heard or you didn't get to do that well let's just have a phone call about it now we've got everything fixed well counsel the holding or the decree not the decree but the holding that judge Higginson wrote in the previous opinion is that mandamus relief was premature it seems to me you arguing was already too late and that's isn't and but but that's that's the holding of this case and I think what that panel held which controls us is that that we would assess if it comes back up to us whether those rights had then been properly addressed in any later proceedings as opposed to turning the clock back before the DPA was entered in that affair assessment what judge Higginson wrote no and we know from judge Clement who concurred to clarify she said our only to express your opinion which she did neither of us joined that opinion correct but she said she was clarifying what the court's opinion said and neither you nor judge Higginson went back on that and we think fairly fairly read I mean was this there doesn't seem to be any way to read this court's decision in Ryan is saying well close enough for government work your rights were not close enough for government work I'm sorry I'm interrupting your style of arguing anyway your time is up you'll have chance for not right we'll hear from the government next I guess good morning your honors and may it please the court Connor Wynn for the United States for several years in this case the government has solicited and weighed the views of the crash victim families as it's decided whether and how to prosecute the Boeing company most recently those prosecutors with the support of many of those families decided to sought to further that public interest through a non-prosecution agreement that secured real benefits for the families avoided litigation risk and required Boeing's continued anti-fraud compliance and aviation safety investments counselor if I may hate to interrupt you so early in your in your presentation how would you characterize the NPAs that approximately 40 references in the and references to the DPA in the NPA things like pursuant to the DPA counsel's point very prominently and emphatically was that we're basically dealing back with the DPA how would you characterize those references I would disagree equally emphatically with those characterizations your honor the references in the NPA to the DPA are predominantly factual citations just to acknowledge the fact that there was a DPA what the terms of that agreement was the pursuant to paragraph 26 language that mr. Cosell just managed met just discussed with this court that paragraph in the DPA explains the consequences of a breach of the deferred prosecution agreement by Boeing and specifically what paragraph 26 says was that if Boeing did not live up to its obligations under that agreement it would be subject to and any of the statements and information that it had given to the government would be available to the government to used in that prosecution in short paragraph 26 established that if Boeing breached that agreement everything in it was set aside or everything was in it was set aside with the exception of Boeing's admissions in its statement of facts those could be continued to use by the government in any subsequent prosecution and I think that in the government's view as we explain on our briefing is what gives the lie to the idea that there's anything left of the DPA to set aside the government's breach determination has done that and returned this case to square one in the exercise of prosecutorial discretion following that breach determination the government could have brought any charge against Boeing that it's thought was appropriate it could have taken the company to trial it could have pursued any sentence that I thought it was right and not only that it then conferred with the crash victim families about these matters repeatedly you can see this in docket entries 245-1 and docket entries 312-2 those are the declarations of the prosecutor who headed up this prosecution following the breach determination in this case and in and in those declarations specifically 245-1 and mr. to newly explained that the government conferred with the families about what charges could bring against Boeing what charges it could bring against other individuals including company management the government conferred with those families about what the appropriate sentencing penalties would be including the statutory maximum fine in this case the government took their views on those matters it replied with its views in turn and the family's views didn't convince the government on several points although at times it did right when we were proceeding in this case with an eye towards a negotiated plea agreement with Boeing the government actually adjusted terms of its proposed plea agreement framework through negotiations with Boeing in response to the crash victims families feedback let me ask you specifically about what mr. Goodsell was talking about the need in the absence of conferral about what charges should be brought against management so how was that handled so the government specifically following its breach determination in May of 2024 discussed these matters with the families it discussed the possibility of bringing such charges against management the government told them that it has found no evidence in this case to support charges that it could prove beyond a reasonable doubt against any individuals except the two technical engineering pilots whose conduct underlies the Boeing company's own criminal conduct in this case now I understand that the crash victim families have very different views about that matter and what the outcome of such a thing might be in a civil proceeding I cannot say but I can tell this court that the Department of Justice many prosecutors having reviewed those facts have not found evidence to substantiate charges that it can prove beyond a reasonable doubt against management now mr. Goodsell mentioned an SEC fine with respect to management is that correct I am aware that the SEC had filings had had proceedings in relation to this case and management but the SEC again works under a different burden of proof the preponderance of evidence standard I'm not I don't want to cast any sort of aspersions on SEC's finding one way or the other nor endorse it all that I mean to say here is they're operating under a different legal standard than does the Department of Justice let me ask you I guess more of a legal question but the government's position is and I'm speaking specifically of the Jane Doe one in two cases from Southern District of Florida does the government concede that the CVRA allows a district court to reopen or set aside a prosecution agreement no we do not we address this matter in our brief at two separate points both regards to the authority of courts to set aside a DPA or an NPA now there's a good deal packed in here so I want to go through it with this court but the first thing judge Englehart to your question I think it's important for this court to realize the crash victim families aren't actually seeking that relief at this point they are once again seeking what they saw in Ryan which is to rewrite the DPA in some fashion I mean presumably the families have no interest in the government setting aside Boeing's admissions for that it could use against Boeing in a trial well you're part of the DPA counsel said he wanted he expected unfettered conferral what would be the value of that if there was no authority for the district judge to revisit or for this court to revisit the NPA okay so moving to just towards the question of what remedies the CVRA specifically authorizes now this court and in Ray Ryan explained how the CVRA remedial powers function and that was based on our briefing in that case what the CVRA does and Ryan says this specifically is it permits district courts to use their inherent article 3 authority to remedy any perceived CVRA wrong now that comes with two caveats right well actually a few caveats first there's the d5 enforcement limitations that professor Cassell talked about those are statutory limitations that Congress placed on a district courts inherent authority in that way there's a further statutory limitation within 37 71 d6 which is that nothing in the CVRA shall be construed to impair the government's prosecutorial discretion that too is a limitation upon a district courts inherent authority now if you get over both of those two statutory limitations on that remedial authority that can be used to rectify CVRA violations you approach the question of what is the district courts inherent authority with regards to a DPA or an NPA now in Ray Ryan said that authority does not allow the court to be right such an agreement it did not technically answer the question of whether a court can set it aside let me back up a little bit how is this it sounds to me like this an NPA in this instance is somewhat similar to a rule 11 c1c where the government's I mean I rather the the would that be a fair analogy I receive a CVRA I'm afraid I can't agree with that characterization your honor and indeed that's in part because of Ryan Ryan specifically says that a DPA is as different from a plea agreement as a DPA is from an NPA so in fact an NPA exists on the opposite side of the spectrum of a rule 11 plea agreement posture they are just fundamentally different in terms of which branch holds the primary discretion in the rule 11 context it is the judiciary that gets to decide whether to accept or reject a plea agreement in the NPA and rule 48 a context that discretion turns to the executive branch this is the court has no role in approving such a settlement is that that's correct the court has no role in approving NPA whatsoever a DPA has a limited role in making sure that's not being used to circumvent the speedy trial clock Ryan talks about that but otherwise there's no authority to approve such an agreement and the converse of that quite naturally is that a court has no authority to void such an agreement it's an out-of-court agreement between the executive branch and a criminal defendant and as I think as the HSBC bank opinion from the Second Circuit puts it nicely the extent of the courts inherent authority to police out-of-court interactions between the executive branch and defendants is if it exists at all incredibly circumscribed and narrow and entirely inappropriate in a case such as this where the government's illegal heir in 2021 was a good-faith legal heir as Judge O'Connor has found has been law of this case now for many years well so mr. Cassell one theme of the argument is that if we just affirm then we've rendered the CVRA a dead letter and you were you were saying at the beginning of the last sort of train of thought you wanted to talk about the enforcement mechanisms in the CVRA what are they I understand what they're not but what are they in the respectfully I disagree with Professor Cassell's characterization that the CVRA becomes a dead letter I know you do yeah so it gives so first there's the question of just what does it do and then second there's the question of remedy and I want to talk about this first it gives victims a voice not a veto right it allows them to confer with the government allows them to be sure but what if there's a violation by conferral right then what in that case I think this word of remedies that can be offered it varies depending on the type of violation so for example in in Ray Wilds the 11th circuit on Bach decision judge Newsom explains how if a prosecutor fails to confer with a victim prior to a courts prior to the presentation of a plea agreement to a court in that case a court can rely on its authority under federal rule of criminal procedure 11c and reject the plea agreement until the government I'm not even going to consider the plea agreement until you've conferred it could do that should the government not provide reasonable notice to a victim of an upcoming court hearing the court can use its inherent scheduling authority to postpone the hearing it can do that in a world such as this where perhaps you can't set aside the DPA or NPA were there findings by the government that by the court that the government had negotiated that agreement in bad faith or affected some sort of deliberate circumvention of rights I think the court probably has inherent authority to make referrals to Congress various bar organizations to the government's own OPR but what it cannot do is it cannot invade the constitutional separation of powers nor can it ignore Congress's statutory command in the CVRA that nothing in that act shall impair prosecutorial discretion let me ask you about mootness and position mr. gazelle took what is moot and what caused it to be moot right so mootness as this court Wells know as this court well knows is what happens when facts on the ground have overtaken a previous legal claim and what caused that mootness here was first the government's breach determination in May 2024 which as I have explained opened this case up to full unfettered conferral and then the fact that the government did in fact reasonably confer with the crash victim families about every aspect of this prosecution from charges to sentencing to restitution to what sort of pretrial resolutions are appropriate I understand that this case has not played out the way that the crash victims victim families have but that is not because they were denied conferral in any meaningful sense all right counsel thank you thank you your honor and the government would ask that this court denied pending mandamus petitions somehow we knew that please so I think it's good afternoon your honors and may it please the court Paul Clement for Boeing you've already heard from the government but let me emphasize two points at the outset first and foremost the facts underlying these cases are undeniably tragic and Boeing deeply regrets that tragedy Boeing has taken extraordinary steps to improve its internal processes and has paid substantial compensations to the victims and the families of the crash victims the MPA entered in May provides over a billion dollars in additional fines payments to families and process improvements at Boeing it is affirmatively supported by over 60 victim families and unopposed by dozens of families more second the legal issues that remain at this juncture of the case are actually quite straightforward the only issue that we think is properly jurisdictionally before this court is whether the CVRA was complied with in the rule 48 a proceedings and in the MPA and the answer to that is quite straightforward there was extensive conferral and the victims families spoke and petitioners were represented in the 48 a proceedings before the court and I think I'd say two things about this one having recognized an error in the DPA process I think it is beyond doubt that the government course-corrected and provide conferral from that point forward the second thing though that I think is equally important in terms of kind of how this played out is that the rights under the CVRA are not as Mr. Cassell suggested unfettered conferral I want to talk more about that because I think I understand what he means by the fetters but you know the statute speaks directly to this in section a5 which is I think the most directly applicable right here and it talks about reasonable conferral not unfettered conferral and I think that word reasonable actually recurs throughout the rights guaranteed in subsection a of the CVRA and I think what was presented here was reasonable and don't take my word from for it I mean both the district court and the council for over 60 victims families specifically said that the conferral that occurred here was reasonable and to say otherwise really isn't fair to the government mr. command there's certainly been argued here that there's evidence that the DPA which was infected probably better word than that with the violation of the CVRA controlled too much what has happened since then since the DPA was it was basically breached what's your reaction to that so I just think that's wrong as a matter of fact and at some point you sort of have to take the government's word for it here but the government is emphatic in its brief and at the podium today that once it found a determination of the DPA had been breached the government at that point viewed itself as a free agent it could prosecute on anything it wanted to it could enter a plea agreement it could enter another DPA or an NPA and it conferred extensively with the families at that point and you know in the previous argument my friend Mr. Cassell told this court that what it really wanted was an opportunity to confer with the government when their hands weren't tied well in the government's view once it found the DPA was breached its hands were no longer tied it could have gone in any direction it wanted to it conferred with the families extensively and at the end of the day the fundamental issue here is that the CDRA provides important rights but they are largely procedural rights and they don't guarantee that the prosecutors are going to see things the way that the families want to and I think that's particularly obvious in cases with multiple victims what's our obligation this court what's our authority to decide whether the consultation was reasonable do we have any authority to measure that well I think ultimately that's a judgment call that the courts have to make I mean there is you know eventually you're gonna sort of I guess I'm asking I'm sorry to interrupt you sure prosecutorial discretion or is it something we can review whether the conferral was reasonable I think you can review that I think that's a judicially reviewable function I think you might review it with some deference but I have to say like in this case I don't think it's a particularly close question there really was you know and again I think that the government really course corrected once it recognized that it made the initial error so they were very careful at every juncture to consult those consultations lasted hours at a time but they also gave the opportunity to submit written submissions that invitation was accepted and substantial written submissions were made I think they could have omitted the written submissions and it would still have been reasonable conferral so I think this is essentially an over-determined question at this point and and what I would like to emphasize is I really think that's the only question that is properly jurisdictionally before this court because I think that the CBRA gives this extraordinary mandamus remedy subject to ordinary appellate review not even sure that exists anywhere else in the law and it is limited to enforcing the CBRA rights so once you say that Judge O'Connor is not aired in concluding that the conferral here was reasonable and there's no reason to remand for that Judge O'Connor made that finding on the record in his opinion so once once you affirm that with all due respect I think the jurisdictional role here is over and that's consistent with what the the Ninth Circuit said in the In Re J.H. case and I think it's actually quite important because I think otherwise you end up having to hear all sorts of difficult questions under Rule 48 and other issues on a mandamus posture and I don't think that's judicially sort of jurisdictionally proper and I think it's also kind of problematic you know in theory you're supposed to decide these CBRA petitions in 72 hours and of course that gets to the question Judge Duncan asked about how do you remedy this I mean the way you remedy most of the CBRA violations is you do remedy them in real time and it's worth recognizing that the CBRA puts obligations not just on the government but on the courts and principally on the district courts so if the district court is holding some sentencing hearing for example and in real time says I'm not going to give the victims an opportunity to be heard either for some other error because the judge doesn't think they're properly victims under the CBRA or something I mean that's where the remedy is obvious the victim files a mandamus petition and the Court of Appeals quickly resolves are you a victim or not and then if you're a victim then the district court has to allow you to appear and be heard and the rest and so I think there are plenty of to remedy violations that occur but in considering the the remedies I think you know my friend talked a lot about d5 but you can't decide this case without reference to d6 and d6 says and it was part of the reason that the Justice Department ultimately supported the CBRA back when it was enacted d6 says you can't interfere with prosecutorial discretion and that's at its zenith in a position to second-guess that judgment so I see my time's expired thank you your honor let me turn right to the government's suggestion that everything was set aside when there was a breach the only thing that happened when Boeing deliberately breached its obligations was that paragraph 26 of the DPA kicked into action allowing the government to prosecute but none of that changed some factual propositions such as whether senior management could be pursued that was already controlled by the agreement of the government and Boeing and paragraph 4h which is an extraordinary provision usually in DPAs you don't see the government listing who's not guilty see listing who is guilty but they exonerated senior management and we have been fettered in conferring about that since January 7th of 2021 now I realize I'm advancing some factual propositions judge Southwick you asked you know what is moot and what caused it those are very good factual questions we'd like to go back to judge O'Connor we'd like to have our day in court we'd like to build a factual record on mootness remember mootness was surfaced for the first time by these parties in December just two months ago in their response briefs they could have raised it long ago I mean I don't know if I should use the word sandbag but we certainly have never had our day in court to develop the record on this issue because of the fact that it was surfaced so late and now with regard to enforcement judge Duncan you were wondering about that so let's where would you see the enforcement provisions in the CVRA D5 is listed enforcement and limitations it says here's what you can't do impliedly indicating what you can do for with respect to district courts you go to be three I'm sorry be one which says that the district court quote shall ensure close quote mandatory language ensure that the rights are protected that simply hasn't happened here we know that there were three proven CVRA violations in connection with the DPA and those rights have never been afforded at this point your honor then can direct the case to go back to O'Connor direct him to set aside the DPA and implicitly the motion to dismiss there will then be unfettered conferrals look we keep hearing from the government they're mischaracterizing our position on mr. Cassell wants us to rewrite the agreement no we want an unfettered conferral I want those families to sit down with mr. Wynn and explain to them why Boeing senior management was involved and why this is a rotten deal maybe they'll be persuasive they've certainly seen persuasive when I listen to them but maybe they won't but that's what the CVRA promises and that's what this court promised to these families back in its decision in Ryan that they'd have perhaps not their day in court but their day in the offices of the United States Department of Justice to try to convince them to do the right thing and if the government nonetheless persists in doing the wrong thing well at least their rights have been respected the CVRA promises as mr. Wynn said that victims will have a voice not a veto we're not asking for a veto power over the NPA or the DPA we're asking for a conferral right with respect to both of those documents conferral rights that have never been extended and there I think it's those those points are fairly straightforward let me submit one other quick point in the last minute here what is the factual record that this court has to rule on I would direct your attention to footnote 19 and judge O'Connor's opinion footnote 19 is very important because what does it say judge O'Connor says look you've made arguments about the statutory fine or the sentencing guidelines or how this agreement is unenforceable I'm going to assume the validity of all of your arguments victims families and nonetheless rule against you so the factual record in this case is that the NPA is unenforceable the factual record in the case is that the statutory maximum fine was 24 billion dollars not the 200,000 or whatever the government cooked up the judge O'Connor assumed that our arguments were valid and so if you're now going to rule on things you have to take those factual findings that judge O'Connor made judge O'Connor by the way has never made a factual finding that the victims rights were protected during the DPA process if you look at the couple of sentences at the end of his opinion it's all about the last few months in the NPA process so there is this is not a case where you can simply say well we rely on what judge O'Connor decided was reasonable conferral judge O'Connor has already decided there was not reasonable conferral about the DPA and so to the extent you're going to rely on factual findings from judge O'Connor that's the factual finding that this court affirmed of course in the Ryan decision and the only question that is remaining is whether the DPA continues to affect the case you can decide that affirmatively for us because the NPA itself says it relies on the DPA but at the very minimum we get a remand back to judge O'Connor to have our day in court to show that this infected show that the that this is essentially the fruit of the poisonous tree show that the victims rights haven't been protected and any other ruling I would submit does render the NPA a dead letter I'm sorry the CVRA a dead letter because this will be the playbook for every government CVRA violation down the road they'll talk to us after the fact and I will repeat the phrase they'll say this is close enough for government work that's not what Congress commended but I'm going to grant the petitions appreciate the able argument from all three of you all of you are here on this very important case so we'll take this and make a decision as rapidly as possible we are adjourned